| | |
|---|---|
| Ekwan E. Rhow - State Bar No. 174604<br>Dorothy Wolpert - State Bar No. 73213<br>Thomas R. Freeman - State Bar No. 135392<br>Marc E. Masters - State Bar No. 208375<br>**BIRD, MARELLA, BOXER, WOLPERT,**<br>**NESSIM, DROOKS, LINCENBERG**<br>**& RHOW, P.C.**<br>1875 Century Park East, 23rd Floor<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-2100<br>Email: mmasters@birdmarella.com | Kara M. Wolke – State Bar No. 241521<br>Marc L. Godino – State Bar No. 182689<br>Jonathan M. Rotter – State Bar No. 234137<br>Pavithra Rajesh – State Bar No. 323055<br>**GLANCY PRONGAY & MURRAY LLP**<br>1925 Century Park East, Suite 2100<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-9150<br>Email: info@glancylaw.com |
| David M. Given – State Bar No. 142375<br>Nicholas A. Carlin – State Bar No. 112532<br>Brian S. Conlon – State Bar No. 303456<br>**PHILLIPS, ERLEWINE, GIVEN**<br>**& CARLIN LLP**<br>39 Mesa Street, Suite 201, The Presidio<br>San Francisco, CA 94129<br>Telephone: (415) 398-0900<br>Email: dmg@phillaw.com | Megan E. Jones – State Bar No. 296274<br>Seth R. Gassman – State Bar No. 311702<br>**HAUSFELD LLP**<br>600 Montgomery Street, Suite 3200<br>San Francisco, CA 94111<br>Telephone: (415) 633-1908<br>Email: mjones@hausfeld.com |

Korey A. Nelson
Amanda K. Klevorn
Patrick Murphree
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70115
Telephone: (504) 779-2845
Email: aklevorn@burnscharest.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TIKTOK, INC. PRIVACY LITIGATION | CASE NO. 5:19-cv-07792-LHK<br><br>Hon. Lucy H. Koh<br><br>[Consolidated with 5:20-cv-02992; 5:20-cv-03185; 5:20-cv-03212; 5:20-cv-03294; 5:20-cv-03390; 4:20-cv-03555; 3:20-cv-03795]<br><br>**JOINT MOTION PURSUANT TO RULE 23(g) FOR APPOINTMENT OF INTERIM LEAD COUNSEL AND PLAINTIFFS' EXECUTIVE COMMITTEE**<br><br>Date: July 23, 2020<br>Time: 1:30 p.m.<br>Ctrm: 8 |

3657598.1

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that, on July 23, 2020 at 1:30 p.m. in the courtroom of the Honorable Lucy H. Koh of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, plaintiffs in the *Hong* and *P.S.* actions will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23(g) for an order appointing Interim Lead Counsel and Plaintiffs' Executive Committee in the above-captioned consolidated actions. Specifically, the *Hong* and *P.S.* plaintiffs request that the Court appoint Ekwan Rhow as Interim Lead Counsel and Chairperson of an Executive Committee consisting of members Kara Wolke, David Given, Megan Jones and Amanda Klevorn.

This motion is based on this notice and motion, the accompanying memorandum of points and authorities, and the attached Declarations of Ekwan Rhow, Kara Wolke, David Given, Megan Jones and Amanda Klevorn (including exhibits thereto).

DATED: June 30, 2020

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: */s/ Ekwan E. Rhow*
Ekwan E. Rhow
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

DATED: June 30, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*
Kara M. Wolke
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

3657598.1

1

| | |
|---|---|
| 1   DATED: June 30, 2020 | **PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP** |

DATED: June 30, 2020      **PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**

By:     */s/ David M. Given*
        David M. Given
Attorneys for Plaintiffs Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon

DATED: June 30, 2020     **HAUSFELD LLP**

By:     */s/ Megan E. Jones*
        Megan E. Jones
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

DATED: June 30, 2020     **BURNS CHAREST LLP**

By:     */s/ Amanda Klevorn*
        Amanda Klevorn
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. THE HONG/P.S. GROUP HAS PERFORMED SUBSTANTIAL WORK IDENTIFYING, INVESTIGATING AND LITIGATING THE CLAIMS. ......................... 2

III. THE HONG/P.S. GROUP POSSESSES AN IDEAL COMBINATION OF EXPERIENCE, KNOWLEDGE AND RESOURCES. ........................................................ 6

IV. THE HONG/P.S. GROUP'S DIVERSITY AND ITS HARMONIOUS WORKING RELATIONSHIP OFFERS ADDITIONAL ADVANTAGES. ........................................ 10

V. CONCLUSION. .................................................................................................................. 10

## I.  INTRODUCTION.

The disturbing breadth of defendants' privacy violations – involving the secret, nonconsensual taking of biometrics, private videos, clipboard content,[1] user identifiers and device identifiers – encompasses approximately 140 million TikTok users spread throughout the United States. It also stretches globally to two China-based defendants closely tied to the Chinese government that are alter egos of the two California-based defendants. So grave are defendants' activities that, after the filing of the original *Hong* complaint, the United States military banned the TikTok app on its members' government-issued devices, and the United States Congress proposed legislation to ban the app on federal employees' government-issued devices.

To appropriately prosecute plaintiffs' claims will require a leadership group comprised of individuals whose passion and devotion to the case already has translated, and will continue to translate, into a substantial commitment of time and resources. It will also require a leadership group whose experience, diversity, and skills (both legal and Chinese-language) can meet the many challenges presented by the scope and seriousness of defendants' privacy violations as well as the wealth and resources of the defendants. Our proposed leadership group – the Hong/P.S. Group – does just that while also providing the cooperation and efficiency that will further support the prosecution of this complex and demanding suit.

The Hong/P.S. Group, which is marked by both ethnic and gender diversity, is led by Ekwan Rhow as proposed Interim Lead Counsel and Chairperson of an Executive Committee consisting of proposed members Kara Wolke, David Given, Megan Jones and Amanda Klevorn. Notably, the Hong/P.S. Group includes the *only* lawyers who initiated the first-filed *Hong* action on November 27, 2019; who sued the China-based defendants driving the misconduct and with the financial means to make the class whole; who, before the filing of any of the other TikTok actions, publicly announced in an April 15, 2020 filing their intention to amend to include Illinois

---

[1] We believe this new clipboard allegation should be added in a consolidated amended class action complaint. *See* https://www.digitalmusicnews.com/2020/06/25/ios-14-tiktok-clipboard-snooping/; https://www.forbes.com/sites/zakdoffman/2020/06/26/warning-apple-suddenly-catches-tiktok-secretly-spying-on-millions-of-iphone-users/

3657598.1                                                                1

plaintiffs and an Illinois Biometric Information Privacy Act ("BIPA") claim; who filed the first BIPA claim on April 30, 2020 (which complaint was trailed by many others who followed its core structure); and who included the first and only BIPA claim against the China-based defendants in a May 11, 2020 amended complaint, including specific technical allegations found nowhere else. It is no surprise that, with this considerable head-start, this is the group of lawyers that has most developed the case and is best-suited to advance the interests of the plaintiffs and the class.

Rule 23 of the Federal Rules of Civil Procedure provides that courts may designate interim lead counsel for a putative class prior to determining whether to certify the suit as a class action, *see* Fed.R.Civ.P. 23(g)(3), and establishes the considerations that courts should take into account when appointing counsel. Fed.R.Civ.P. 23(g)(1)(A)(i)-(iv); Fed.R.Civ.P. 23(g)(1)(B). We respectfully submit that the Hong/P.S. Group best satisfies Rule 23(g) and its specific criteria, and we respectfully request that the Court appoint us for the reasons herein.

## II. THE HONG/P.S. GROUP HAS PERFORMED SUBSTANTIAL WORK IDENTIFYING, INVESTIGATING AND LITIGATING THE CLAIMS.

The first factor in weighing competing bids for interim lead counsel is "the work counsel has done in identifying or investigating potential claims in the action." Fed.R.Civ.P. 23(g)(1)(A)(i). The Hong/P.S. Group has done far more work identifying, investigating, and litigating the claims than any of the other applicants.

The original work performed by Bird Marella and Glancy Prongay led to the filing of a 46-page *Hong* complaint, and additional original work performed by Bird Marella, Glancy Prongay and Phillips Erlewine resulted in an amended 89-page *Hong* complaint, both of which revealed defendants' serious misconduct as follows: The TikTok app – including software development kits and analytic libraries embedded in the app – secretly vacuum up and transfer to servers in China (and other servers accessible in China) vast quantities of private and personally-identifiable user data that can be used to identify, profile and track the physical and digital location and activities of United States users now and in the future. The TikTok app also surreptitiously takes TikTok users' private draft videos they never intended for publication. Defendants and their sophisticated China-based engineering team covertly mine these private videos, as well as publicly posted TikTok user

videos, for highly sensitive and immutable biometric identifiers and information. In addition to this mining of TikTok user videos at the server level in China, the functionality and code of the TikTok app evidences defendants' hidden and nonconsensual collection and use of TikTok users' biometric identifiers and information.

Bird Marella and Glancy Prongay initiated their joint investigation of this case in early 2019, and subsequently teamed up with Phillips Erlewine in early 2020, to build a powerful case against defendants by:

- working closely with highly trained source code experts in analyzing multiple versions of the Musical.ly and TikTok apps to uncover (1) the various types of private and personally-identifiable data stolen by defendants and third-party entities whose software development kits and analytic libraries are secretly embedded within the apps, and (2) the domestic and foreign destinations of such misappropriated data;

- collecting and analyzing numerous iterations of the TikTok terms of use and privacy policies upon which defendants will rely for their arbitration and consent defenses, and developing the arguments and evidence necessary to defeat those defenses;

- thoroughly researching the defendant corporations – with the aid of two teams of investigators in California and in China, an ESI expert, and colleagues with Chinese-language skills to translate documents – to better understand defendants' corporate structure, document and data collection and retention systems, internal reporting systems, business and advertising models, artificial intelligence and patent development programs, and other relevant foreign and domestic activities, all of which is relevant to establishing the statutory and common law violations, the class's damages, defendants' unjust enrichment, and the alter ego defense to the foreign defendant companies' anticipated personal jurisdiction challenge;

- consulting with well-credentialed experts who have conducted original research into the intersection of data privacy, artificial intelligence, Chinese corporations

and the Chinese government, including Chinese laws requiring corporations to share data with the government; and

- researching numerous legal issues in the data privacy field as they relate to this case – such as (1) jurisdiction and venue; (2) potential causes of action; (3) standing; (4) damages; (5) injunctive relief; (6) notice and consent, and (7) arbitration and class action waivers – to craft the original and amended *Hong* complaints.

In early 2020, Bird Marella, Glancy Prongay, and Phillips Erlewine made another substantial investment to further develop the factual and legal foundation for a BIPA claim, including hiring another highly trained source code expert who teaches at a prominent university and a biometrics expert with notable experience in BIPA litigation, both of whom helped to develop the unlawful face geometry scanning allegations. The amended *Hong* complaint contains the most thorough BIPA allegations among the competing lawsuits, focusing not just on the app's conspicuous Augmented Reality ("AR") features that are the cornerstone of other lawsuits, but also on considerably stronger evidence of BIPA violations (and violations of other statutes and common law), such as:

- the functionality and code of the TikTok app, including (1) content recommendations based on TikTok users' race/ethnicity and age; (2) scans of face geometry to determine TikTok users' age; (3) censoring video content to remove people defendants consider "ugly"; (4) code for deepfake videos; and (5) code for age, race/ethnicity and emotion recognition;

- ongoing work in China, including (1) the application of facial recognition technology to TikTok users' videos by highly-trained engineers skilled in computer vision, convolutional neural network and machine learning; (2) patent applications for face, voice, age, race/ethnicity and emotion recognition technologies; and (3) the publicly-known functionality of the Chinese version of TikTok (Douyin) that allows its users to perform facial recognition on faces selected by such users from other users' videos; and

- the defendants' legal and political obligations to accumulate and share vast troves

3657598.1                                             4

of data, including biometrics, in order to assist the Chinese government in achieving world dominance in artificial intelligence, and population surveillance and control.

Bird Marella, Glancy Prongay, and Phillips Erlewine also participated in an April 6, 2020 mediation of the eight original claims and the BIPA claim before former United States District Judge Layn Phillips *before* any other actions had been filed. Preparation for this mediation involved additional technical expert work, further developing responses to defendants' anticipated motions, and formulating specific changes to defendants' business practices to bring them into compliance with applicable law. Bird Marella and Glancy Prongay served eight sets of discovery on defendants prior to mediation, and defendants responded to each. The two firms also negotiated and agreed to a protective order with defendants to facilitate discovery.

Completely independent of *Hong* counsel, *P.S.* counsel Hausfeld and Burns Charest filed the first BIPA claim against the California defendants on April 30, 2020. Leading up to that filing, attorneys at the two firms put in substantial work over the course of several months investigating the facts and researching several key legal issues. This work included, but was not limited to: reviewing the defendants' corporate structure; reviewing pertinent patent applications; collecting and reviewing TikTok's terms of service and privacy policy; collecting and reviewing news articles and other publicly available information about the functionality of the TikTok app; researching TikTok's investigation by the FTC; reviewing prior BIPA litigation and case law; researching causes of action, arbitration, class action waivers, and standing; and drafting the complaint. Hausfeld's and Burns Charest's substantial work and careful consideration of all pertinent issues before filing suit demonstrates their commitment to this case and to the putative class members. Their complaint was the first to plead claims related to TikTok's augmented reality service that utilizes user biometric information in violation of BIPA. It was only after they filed their lengthy and detailed complaint that numerous other law firms, with the benefit of Hausfeld and Burns Charest's work product, filed similar cases throughout the country.[2]

---

[2] *P.S.* counsel were unaware that *Hong* counsel already had expressed an intent to amend their

Counsel from the five firms in the Hong/P.S. Group also worked closely together to seek transfer of the other TikTok cases to this jurisdiction.

### III. THE HONG/P.S. GROUP POSSESSES AN IDEAL COMBINATION OF EXPERIENCE, KNOWLEDGE AND RESOURCES.

The second, third and fourth factors in evaluating multiple applications for interim lead counsel are "(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed.R.Civ.P. 23(g)(1)(A)(ii)-(iv).

The Hong/P.S. Group is structured in a manner that takes full advantage of the depth and breadth of the experience, knowledge, and resources it possesses. We respectfully propose the following leadership configuration and general oversight responsibilities:[3]

- **Ekwan Rhow**, Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow P.C.: Interim Lead Counsel and Chairperson of the Executive Committee with general oversight of all work, including work assignments and billing review.
- **Kara Wolke**, Glancy Prongay & Murray LLP: Executive Committee Member with oversight of offensive discovery, including e-discovery and China-related discovery.
- **David Given**, Phillips Erlewine Given & Carlin LLP: Executive Committee Member with oversight of all expert work and analysis.
- **Megan Jones**, Hausfeld LLP: Executive Committee Member with oversight of settlement, including mediation, motions for preliminary and final approval, addressing potential objections, and claims administration.
- **Amanda Klevorn**, Burns Charest LLP: Executive Committee Member with oversight of pleadings, motions, plaintiff vetting, coordination and management,

---

original complaint to include Illinois plaintiffs and a BIPA claim at the time of the *P.S.* filing, and they performed their own independent work to develop the claim.

[3] *See, e.g.,* Order Selecting Lead Plaintiffs' Counsel And Plaintiffs' Executive Committee, *In re Yahoo! Inc. Customer Data Security Breach Litig.*, Case No. 16-MD-02752-LHK, Doc. No. 58 (ordering similar lead counsel/chairperson plus four executive committee members).

3657598.1                                      6

and responding to discovery.

**Ekwan Rhow**. Mr. Rhow has been recognized by several reputable organizations as one of the finest trial lawyers in America. He has litigated and resolved numerous class actions involving the automotive, electronics, telecommunications, financial services and apparel industries with potential liabilities ranging from $100 million to $1 billion, and he has served as lead counsel in a plaintiff-side class action where plaintiffs and the class prevailed at trial. He also has considerable experience with China-related litigation, including successfully negotiating with the Chinese government and a major Chinese electronics company for the release of an imprisoned American executive. That case was the subject of a *New York Times* Pulitzer Prize winning investigative report, and it provided Mr. Rhow and his partner Tom Freeman (a member of Bird Marella's team in this case) a keen understanding of the nature of the relationships between large Chinese companies and the Chinese government, such as those present here. Mr. Rhow also developed a strong interest in data privacy from two copyright cases that he, along with his colleague Marc Masters (another member of Bird Marella's team here), successfully prosecuted on behalf of a small start-up that had developed keystroke encryption technology and licensed it to a global cyber security company. Mr. Rhow and Mr. Masters developed an ability to litigate source code issues, such as those at issue with the TikTok app, through one trial and multiple depositions of computer software engineers in these two copyright cases. Mr. Rhow's team at Bird Marella includes a founding partner, Dorothy Wolpert, who has decades of experience managing complex civil trials; lawyers with substantial class action experience on both the defense and plaintiff side; a primary author of the original and amended *Hong* complaints (Mr. Masters); and the availability of lawyers with Chinese-language skills to perform specific tasks as needed. *See* <u>Exhibit A</u>.

**Kara Wolke**. Ms. Wolke is a prominent plaintiff-side class action litigator who has recovered hundreds of millions of dollars for class members and who has substantial experience conducting large-scale discovery of China-based entities, including Chinese-language documents and depositions. Ms. Wolke's Glancy Prongay team includes Marc Godino, the head of the firm's consumer class action department, who has extensive successful experience in consumer class actions, including data privacy cases. Ms. Wolke's colleague Jonathan Rotter, who has been

instrumental in the investigation and prosecution of this case, has extensive experience in technical and patent related matters that will be at issue here, and who served for three years as the first Patent Pilot Program Law Clerk for the Central District of California. Ms. Wolke's team also includes Pavithra Rajesh, who has been a key attorney in drafting the pleadings and motions to date. *See* Exhibit B.

**David Given**. Mr. Given has more than 30 years of law practice experience representing clients in the entertainment and technology industries. From 2013-18, he served as lead and class counsel upon appointment by the Honorable Jon S. Tigar in a data privacy class action against Apple and six app developers, and did much of the heavy lifting on the technical and data privacy aspects of that case. His team includes firm partner Nicholas Carlin, a Harvard-trained physicist and former computer programmer and Patent Agent with experience as a principal in the Silicon Valley venture business, and senior associate Brian Conlon, a cum laude graduate of Harvard Law School, who served as a staff attorney at the Eighth Circuit Court of Appeals in St. Louis before joining the firm. *See* Exhibit C.

**Megan Jones**. Ms. Jones, based in San Francisco, is a partner at Hausfeld and is known as a "trailblazer" who is "highly respected from all contingents"—and, indeed, was recently praised by a member of the JPML as one of "the nation's best lawyers in an MDL" and heralded as a "professional problem solver." One of the LawDragon's 500 *Leading Lawyers in America*, she has been involved in leadership in numerous class actions including *In re Diisocyanates Antitrust Litig.* (J. Ambrose) and *In re Marriott International Inc., Customer Data Security Breach Litig.* (J. Grimm). With close to 20 years of experience, Ms. Jones is also widely respected as a settlement negotiator for class actions, as discussed in her declaration. James Pizzirusso, Chair of the firm's Privacy practice group, and recognized by *the National Law Journal* as a "Cybersecurity Trailblazer" will assist Ms. Jones given his privacy and BIPA experience. Hausfeld, an international law firm with offices throughout the globe, is well-versed in obtaining discovery through the Hague Convention and the Letters Rogatory process and has litigated numerous cases against Chinese and other Asian entities including *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018), wherein they obtained a unanimous 9-0 Supreme Court

decision in their client's favor against Chinese producers of Vitamin C. *See* <u>Exhibit D</u>.

**Amanda Klevorn**. Ms. Klevorn is a plaintiff-side litigator with a focus on multidistrict class action and mass tort cases. Ms. Klevorn has substantive, hands-on experience at all stages of complex litigation, including drafting pleadings, responding to discovery, motion practice, taking and defending depositions, and trial preparation. In the last year, Ms. Klevorn was the lead brief writer on critical *Daubert* motions and opposition briefs in *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, and she took and defended several key corporate representative and expert depositions in *In re: Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*. Earlier in her career, Ms. Klevorn represented financial institutions against Target, Home Depot, K-Mart, and Anthem for losses incurred as a result of data security breaches. Ms. Klevorn's team includes Warren Burns, Korey Nelson, and Will Thompson, all accomplished trial attorneys who stand ready to contribute their time and effort to this case. *See* <u>Exhibit E</u>.

The Hong/P.S. Group provides all the experience, knowledge, and skill necessary to successfully prosecute this case. It is a diverse group composed of both younger attorneys and more seasoned attorneys with substantial trial experience; attorneys who have represented both plaintiffs and defendants in class actions; attorneys who already have performed substantial work developing the case factually and legally; and attorneys on the cutting edge of the privacy field.

Finally, the Hong/P.S. Group has the resources necessary to finance a case of this magnitude, as shown by prior lawsuits. These law firms are responsible for achieving some of the largest class action recoveries, and defending companies exposed to some of the largest potential liabilities, in the most complex, document-intensive, and high-profile class actions ever, including data breach and privacy cases. The Hong/P.S. Group will not be using third-party litigation finance because it is capable of financing the litigation without outside assistance. Moreover, while each firm is committed to expending whatever resources are necessary to achieve a favorable result for the class, all counsel are extremely cognizant of the need to control costs, having diligently done so in the other complex litigation they have led, and will do so here. The Hong/P.S. Group has significant experience monitoring billing and avoiding duplication of effort

in assigning and undertaking case-related work and understands the importance of efficient, effective litigation and of keeping this Court informed in whatever manner it desires.

### IV.   THE HONG/P.S. GROUP'S DIVERSITY AND ITS HARMONIOUS WORKING RELATIONSHIP OFFERS ADDITIONAL ADVANTAGES.

As a fifth criterion, this Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B). The strong diversity of the Hong/P.S. Group is one important consideration.[4] A second is the history of the Hong/P.S. Group's attorneys successfully working with each other in this case and other major class action cases, which weighs heavily in favor of appointing our group, in its entirety, to lead this litigation.[5] Also, the Hong/P.S. Group's lawyers have had close working relationships in similar class actions with the other lawyers applying for leadership and are able to work well with those counsel.[6] And the Hong/P.S. Group has developed a good working relationship with the defense lawyers at Wilson Sonsini as a result of mediating with them, negotiating discovery with them, and litigating against them in other cases.

### V.   CONCLUSION.

We respectfully submit that the Hong/P.S. Group already has demonstrated its commitment and ability to: (1) lead this case efficiently and without duplication of effort; (2) effectively bring to bear the combined resources of the plaintiffs' group; and (3) and coordinate in a cooperative manner with defense counsel. We hope to follow through with these efforts throughout the case and continue the work that we began at the outset until this litigation's ultimate resolution is reached – via trial or otherwise.

---

[4] The Duke Law Bolch Judicial Institute's *Standards and Best Practices for Large and Mass-Tort MDLs* encourages appointment of attorneys who "fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." Best Practice 3C at 46.

[5] "The transferee judge may take into account whether counsel applying for leadership roles have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *Duke Standards*, Best Practice 4C(iii).

[6] Because there are other experienced and talented firms vying for a role, we are open to using others to perform work under the oversight of the proposed lead counsel / chairperson and the four proposed executive committee members. We have not promised any others a role on the case, and we defer to the Court's judgment as to the potential participation of these other firms.

| | |
|---|---|
| DATED:  June 30, 2020 | **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.** |
| | By: _____/s/ Ekwan E. Rhow_____<br>Ekwan E. Rhow<br>Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila |
| DATED:  June 30, 2020 | **GLANCY PRONGAY & MURRAY LLP** |
| | By: _____/s/ Kara M. Wolke_____<br>Kara M. Wolke<br>Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila |
| DATED:  June 30, 2020 | **PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP** |
| | By: _____/s/ David M. Given_____<br>David M. Given<br>Attorneys for Plaintiffs Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon |
| DATED:  June 30, 2020 | **HAUSFELD LLP** |
| | By: _____/s/ Megan E. Jones_____<br>Megan E. Jones<br>Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington |
| DATED:  June 30, 2020 | **BURNS CHAREST LLP** |
| | By: _____/s/ Amanda Klevorn_____<br>Amanda Klevorn<br>Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington |

3657598.1

## ATTESTATION

I, Ekwan E. Rhow, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from each signatory.

*/s/ Ekwan E. Rhow*

Ekwan E. Rhow

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Court's Electronic Mail List, and I hereby certify that I caused to be served the foregoing document via email and/or the United States Postal Service to the non-CM/ECF participants indicated on the Additional Service List.

I certify on this date of June 30, 2020 under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

*/s/ Ekwan E. Rhow*

Ekwan E. Rhow

3657598.1

12